IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 26, 2012


IN THE MATTER OF MICHAEL R.O., JR.,


**Appeal from the Juvenile Court for Henry County**
**No. 10131     Vicki S. Snyder, Judge**

_____

**No. W2011-02488-COA-R3-PT - Filed May 24, 2012**

_____

This is a termination of parental rights case. Father/Appellant appeals the trial court's termination of his parental rights to the minor child at issue. The trial court found, by clear and convincing evidence, that Father had committed severe child abuse, had been sentenced to prison for the child abuse, and had been sentenced to confinement for more than ten years. The trial court also found that termination of Father's parental rights was in the child's best interest. Affirmed.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

J. Neil Thompson, Huntington, Tennessee, for the appellant, Michael O.

Robert E. Cooper, Jr., Attorney General and Reporter; Mary Byrd Ferrara, Assistant Attorney General, for appellee, State of Tennessee, Department of Children's Services.

Gail Webb West, Huntington, Tennessee, Guardian Ad Litem for the minor child, Michael R.O.


**OPINION**


**I. Background**


The minor child, Michael R. O., was born on January 11, 2010 to

Respondent/Appellant Michael O. ("Father") and Rebecca B.[1]   The State of Tennessee Department of Children's Services ("DCS," or "Appellee") first became involved with this child on March 30, 2010, when it received a referral of child abuse from the Vanderbilt Children's Hospital ("Vanderbilt").  Kay Wheeler, a DCS investigator, went to Vanderbilt on March 31, 2010 to investigate the report.  Specifically, the referral indicated that the child had suffered multiple fractures to his ribs, legs, and feet, and that these injuries were not accidental.

Upon his arrival at Vanderbilt on March 30, 2010, the child was diagnosed with the following injuries: (1) healing bilateral third and fourth rib fractures; (2) nearly healed right eleventh rib fracture; (3) physiological periosteal reaction along the right femur; (4) suspect buckle fracture through the distal right tibia; (5) fracture of the base of the first right metatarsal; (6) suspected fracture through the right distal third metatarsal; (7) healing injury along the distal two-thirds of the left femur, secondary to repetitive trauma; (8) healing bucket handle fracture through the distal left tibia; and (9) healing fracture through the base of the left first metatarsal.  This information was first revealed in the investigation, and was then confirmed by the direct testimony at the hearing.

At the time of the child's birth, Mother was nineteen, and Father was twenty-nine. After Michael R. O. was born, the family lived with Mother's mother and stepfather.  Mother testified that she and Father shared parenting responsibilities.  It appears that, during the time the child was in their care, neither Mother, nor Father were employed.  Mother stated that, although other adults were in the home, they were never alone with the child, with the exception of Father.  Mother stated that Father was alone with the child for several hours during the day, and that he would also get up in the night to attend to the child.

The record clearly establishes that Father had a temper and regularly became angry especially when he drank alcohol.  Even in his own testimony, Father admitted that he had longstanding anger issues, which had not been treated.  He further admitted that he often blacked out from drinking alcohol, and that alcohol made him become more angry.  He admitted that he drank more beer than liquor because, when he drank liquor, his "horns came out."  Moreover, Father admitted to smoking marijuana, and regularly taking prescription medications such as Klonopin, Soma, Percocet, and possibly "Oxy."  These medications were not prescribed to Father, but were allegedly provided by others.

The evidence established that, when the child was approximately six weeks old, he developed colic.  Mother testified that, during this time, she began to notice bruising on the

---

[1] In termination of parental rights cases, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

child when he had been alone with Father. When she confronted Father, he allegedly responded that he may have accidentally bruised the child's face while trying to give him some prescription medication via mouth syringe. According to Mother's testimony, the child would "scream" when Father tried to pick him up.

On March 11, 2010, the child received his two-month, immunization shots at the Health Department. The shots were given in both of the child's legs. Mother testified that, on Sunday March 14, 2010, she left the child alone with Father for several hours. When she returned, she testified that she noticed that the child had swelling on his left leg; a neighbor, who also saw the swelling, suggested that it was the result of the shots. By Monday morning, March 15, 2010, the swelling had not subsided and Mother took the child back to the Health Department for examination. The Health Department prescribed Motrin/Tylenol and ice packs.

By March 29, 2010, the swelling had not abated, and the child was seen by his pediatrician, Dr. John O. Jackson. Dr. Jackson ordered X-rays and, upon review of the X-rays, Dr. Jackson made unusual findings, which led him to opine that the child could have a bone tumor, or some genetic problems. The family was referred to Vanderbilt, where full-body CT and MRI scans of the child were ordered. The child was then seen by Dr. Paul Hain. According to Dr. Hain's testimony, upon examination of the films, the child was found to have myriad injuries. The medical evidence establishes that the child had multiple rib fractures, as well as fractures to both of his legs and feet. Some of these injuries were older; the bilateral fracture to the third and fourth ribs were determined to be between one and two weeks old. Based upon calcification, the fracture to his eleventh rib was determined to be older. The child's feet were fractured in several places, and these injuries were found to be one to three weeks old. The child also had ankle fractures that were also acute (i.e., less than one week old) to somewhere between one and three weeks old. The evidence suggests that the child's injuries were the result of multiple events, which had occurred between six weeks and eleven weeks of age. Dr. Hain testified that, each time a bone was broken, the child experienced pain. Moreover, the doctor opined that, when a child is injured to this extent, the child will be crying in pain most of the time. Dr. Hain further opined that the person who had broken the child's bones would clearly have known what happened. As to the cause of the child's injuries, Dr. Hain stated:

> Let me be extremely clear. These are inflicted injuries upon this child. There is no possible way this child inflicted them upon himself.

Dr. Hain also testified that the force necessary to cause these injuries was an amount that would exceed that necessary for the normal handling of a child, and that these types of

injuries are not seen in routine child care cases. The doctor stated that bucket handle fractures, such as those suffered by this child, involve a pulling and turning of the bone. The doctor further opined that multiple fractures, including posterior rib fractures and bucket handle fractures in a child of this age are specific for non-accidental trauma. Based upon his medical expertise, Dr. Hain opined that this child was the victim of non-accidental trauma at the hands of a person with the strength and coordination of an adult. The doctor further testified that the fractures seen in Michael R. O. are only seen in children with abusive injuries, and are not seen in children with underlying genetic bone disorders, such as that originally suspected by the child's pediatrician in this case.

After receiving the referral from Vanderbilt, on April 1, 2010, DCS filed a petition for temporary custody of the child. On the same day, the Henry County Juvenile Court granted a protective custody order, finding the child to be dependent and neglected, and giving temporary custody to DCS. A preliminary hearing was held on April 7, 2010. On May 10, 2010, the court entered an order maintaining temporary custody with DCS, and appointing counsel for Mother and Father.[2]

On December 16, 2010, DCS filed its petition to terminate Mother and Father's parental rights. As grounds, DCS alleged: (1) severe child abuse under Tennessee Code Annotated Sections 36-1-113(g)(3) and 37-1-102(b)(21), for infliction of injuries upon the child and/or failure to protect the child from these injuries; (2) that Father had been sentenced for child abuse under Tennessee Code Annotated Section 36-1-113(g)(5); and (3) that Father had been sentenced to more than ten years imprisonment for attempted aggravated child abuse. DCS further alleged that it was in the child's best interest for Mother and Father's parental rights to be terminated.

The petition to terminate parental rights was heard on June 17, 2011. At the hearing in this case, Mother claimed that she had no knowledge of any of the child's injuries until he was diagnosed at Vanderbilt. She testified that she was not aware of any persons, other than Father, who were alone with the child. She opined that she knew of no other way that the

---

[2] We note that DCS and Mother entered into a parenting plan, under which Mother was granted supervised visitation. Mother was also referred to counseling, and parenting classes. Because Father has been incarcerated since April 5, 2010, DCS was limited in the services it could provide to Father. Nonetheless, the grounds relied upon by the trial court to terminate Father's parental rights do not rest upon DCS's reasonable efforts toward reunification. In fact, Tennessee Code Annotated Section 37–1–130 (g)(4)(A) provides that reasonable efforts to reunify a family are not required to be made if a court has determined that a parent has subjected the child or a sibling to severe child abuse. Consequently, DCS was not required to provide reasonable efforts in this case because the child had previously been adjudicated dependent and neglected on the ground of severe child abuse.

child's injuries could have occurred absent abuse by Father. Father's testimony provides additional support for that finding.

During his testimony, Father admitted that he had bruised the child's face when trying to give him medication by mouth. Although Father denied ever having hit the child, and specifically denied any knowledge of how the child could have sustained broken toes and legs, he did admit that he squeezed the child, which action may have resulted in the rib fractures. When asked why he had squeezed the child, Father stated that he was tired after having been awake for two or three days with the colicky infant. Specifically, Father stated that he had attempted to "calm" the child at approximately 4:00 a.m. one morning by squeezing him. Father admitted to DCS investigator Ms. Peeler that, when a baby is crying or sick, "you don't know your own strength." There was no evidence that this squeezing was accidental; throughout the proceedings, Father readily admitted that he had knowingly held the child tightly in an effort to stop his crying.

Father was ultimately indicted for Aggravated Child Abuse in connection with his admission that he squeezed the child and broke his ribs. He pled guilty to Attempted Aggravated Child Abuse and was sentenced to eleven years in prison for this offense. Father's eleven year sentence was imposed on July 12, 2010, and he received credit for time served since his April 5, 2010 incarceration.

By Order of September 7, 2011, the trial court terminated Father's parental rights to this child on three grounds, all of which were found by clear and convincing evidence: (1) severe child abuse under Tennessee Code Annotated Section 36-1-113(g)(4); (2) ten-year sentence under Tennessee Code Annotated Section 36-1-113(g)(6); and (3) sentence for child abuse under Tennessee Code Annotated Section 36-1-113(g)(5). The court further found, by clear and convincing evidence, that termination of Father's parental rights was in the child's best interest. Although it terminated Father's parental rights, the trial court specifically found that the evidence against Mother did not clearly and convincingly support termination of her parental rights. No appeal was taken from this decision. Therefore, Father is the sole appellant in this matter.

## II. Issues

Father appeals the termination of his parental rights and raises three issues for review, which we restate as follows:

> 1. Whether the court erred in finding that [Father] severely abused the child by clear and convincing evidence.

2. Whether the court erred by failing to make sufficient findings of fact to support the conclusion that termination of parental rights was in the best interest of the child.

3. Whether the court erred in finding that termination of [Father's] parental rights was in the best interest of the child.

### III.  Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash–Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004–00999–COA–R3–PT, M2004–01572–COA–R3–PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36–1–113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36–1–113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and  convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review as set forth in Tenn. R. App. P. 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to

terminate parental rights. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002). When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See **McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See **id**.*; *see also **Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

## IV. Grounds for Termination of Father's Parental Rights

The trial court found three grounds for terminating Father's parental rights. Only one ground must be proved by clear and convincing evidence to justify termination of parental rights. Tenn. Code Ann. § 36-1-113(c). After reviewing the entire record in this case, we conclude that all three grounds relied upon by the trial court are established by clear and convincing evidence in the record.

## A. Severe Child Abuse, Tennessee Code Annotated Section 36-1-113(g)(4).

In Tennessee, a court may terminate parental rights when:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian.

Tenn. Code Ann. § 36-1-113(g)(4). "Severe child abuse" is defined, in relevant part, as:

> The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death.

Tenn. Code Ann. §37-1-102(b)(23)(A)(i). If a court finds that a parent has committed severe child abuse under this section, this finding establishes the showing of "substantial harm"

required under ***In re Askew***, 993 S.W.2d 1, 4 (Tenn. 1999), which allows the State to maintain custody of the child. *See, e.g.,* ***Dept. of Children's Serv's v. L. S.***, No. M1999-00847-COA-R3-CV, 2000 WL 1425234 (Tenn. Ct. App. Sept. 28, 2000) (stating that a finding of abuse or severe child abuse establishes substantial harm).

In the instant case, the trial court found, by clear and convincing evidence, that Father had knowingly committed child abuse on Michael R. O. However, Father contends that his actions do not constitute severe child abuse because the record lacks evidence that he "knowingly" harmed the child. We disagree.

A person's conduct is "knowing," and he or she acts, or fails to act, "knowingly" when he or she has actual knowledge of the relevant facts and circumstances, or when he or she is either in deliberate ignorance of, or in reckless disregard of, the information that has been presented to him or her. ***In re H. L. F.***, 297 S.W.3d 223, 235 (Tenn. Ct. App. 2009). Persons act "knowingly" when they have specific reason to know the relevant facts and circumstances, but deliberately choose to ignore them. ***In re R. C. P.***, No. M2003-01143-COA-R3-PT, 2004 WL 1567122 (Tenn. Ct. App. July 13, 2004). In his testimony, Father admitted that he intentionally "squeezed" the child in order to "calm" him. Father further admits that this action "may" have broken the child's ribs. As confirmed by Dr. Hain's testimony, this child's injuries were not accidental, but were the result of intentional infliction of overt force. Dr. Hain further opined that these injuries would have caused the child to immediately react in pain, and that anyone nearby would know that the child was hurt. Father's admission that he intentionally squeezed the child, coupled with Dr. Hain's testimony, clearly and convincingly establishes that Father's actions were deliberate, or in the very least, were done with reckless disregard of the fact that this squeezing could injure a child of this age. In this sense, Father's action in squeezing this child with sufficient force to break his ribs constitutes "the knowing use of force on a child that is likely to cause great bodily harm or death."

Father further contends that his conviction for attempted aggravated child abuse was the sole evidence considered by the court in reaching the conclusion that he committed severe child abuse. We again disagree. As discussed above, the trial court clearly relied upon Father's own admissions and the testimony of Dr. Hain in reaching its conclusion. Although Father denies that he could have broken the child's legs, toes, or ankles, he readily admitted that he often drinks to the point of blackout. Moreover, Father admitted that, when he drinks, he has a temper. Despite Father's admitted knowledge of the fact that his temper was not controlled and that he was more volatile when he was drinking, Father nonetheless allowed himself to be around the child when he was drinking and taking drugs. This fact supports a finding that Father knowingly failed to protect the child. From the record as a whole, we conclude that there is sufficient evidence to clearly and convincingly show that Father

committed severe child abuse in this case.

## B. Two Year Sentence for Attempted Aggravated Child Abuse

Tennessee recognizes two separate grounds for termination of parental rights based upon a parent's conviction and sentencing in criminal proceedings. Tennessee Code Annotated Section 36-1-113(g)(5) provides that parental rights may be terminated if:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian;

*Id*. In the instant case, it is undisputed that Father was sentenced to eleven years imprisonment for attempted aggravated child abuse on this child. There is no counter evidence in the record; consequently, we can only conclude that the evidence clearly and convincingly establishes this ground for termination of Father's parental rights.

## C. Sentence Greater than Ten Years

Tennessee Code Annotated Section 36-1-113(g)(6) states that parental rights may be terminated if:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

*Id*. Again, it is undisputed in the record that Father was sentenced to eleven years confinement. This sentence was imposed on July 12, 2010, and Father received credit for

time served since his April 5, 2010 incarceration. The record establishes that the child was born on January 11, 2010, and that he was under the age of eight at the time Father was sentenced. Therefore, there is clear and convincing evidence in the record to support termination of Father's parental rights on this ground.

Having determined that the record supports the trial court's termination of Father's parental rights on all three of these grounds, we next turn to address whether the record also supports, by clear and convincing evidence, the trial court's finding that termination of Father's parental rights was in the child's best interest.

### V. Best Interests

When at least one ground for termination of parental rights has been established, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), then the interests of parent and child diverge. *In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005). The focus shifts to the child's best interest. *Id*. at 877. Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). "The child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. These factors include, but are not limited to, the following:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular

-10-

visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. §36-1-113(i). This Court has noted that, "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re. M. A. R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877.

In his appellate brief, Father challenges the trial court's order on the ground that it fails to provide specific findings of fact to support the conclusion that termination of Father's

parental rights was in the child's best interest. Tennessee Code Annotated Section 36-1-113(k) provides that: "The court shall enter an order which makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." The statute does not, however, define what constitutes specific findings of fact and conclusions of law. However, this Court has examined the similar wording of Tennessee Rule of Civil Procedure 52.01, which requires that a "court shall find the facts specially and shall state separately its conclusions of law thereon." *See, e.g.,* **Brooks v. Brooks**, 992 S.W.2d 403 (Tenn. 1999).

This Court has previously held that, in termination cases, the "trial court's failure to comply with [Tennessee Code Annotated Section] 36-1-113(k) affects more than the standard of appellate review. It affects the viability of the appeal." *In re G.N.S.*, No. W2006-01437-COA-R3-PT, 2006 WL 3626322, at *6 (Tenn. Ct. App. Dec. 13, 2006) (quoting *In re C.R.B.*, No. M2003-00345-COA-R3-JV, 2003 WL 22680911, at *4 (Tenn. App. Ct. Nov. 13, 2003)). "A trial court's failure to comply with [Tennessee Code Annotated Section] 36-1-113(k) fatally undermines the validity of a termination order." *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004). This Court cannot simply review the record *de novo* and determine for ourselves where the preponderance of the evidence lies. *State v. C.H.K.*, 154 S.W.3d 586, 591 (Tenn. Ct. App. 2004); *see also **Adoption Place, Inc. v. Doe**, No. M2007-01214-COA-R3-PT, 2007 WL 4322014, at *6 (Tenn. Ct. App. Dec. 5, 2007). When a trial court has failed to comply with the requirements of Tennessee Code Annotated Section 36-1-113(k), this Court "must remand the case to the trial court for the entry of written findings of fact and conclusions of law." *In re B.L.R.*, No. W2004-02636-COA-R3-PT, 2005 WL 1842502, at *15 (Tenn. Ct. App. Aug. 4, 2005) (citing cases).

Tennessee appellate courts strictly construe Tennessee Code Annotated Section 36-1-113(k) and require meticulous compliance with its mandates. *In re M.E.I.*, No. E2004-02096-COA-R3-PT, 2005 WL 2346978, at *2–3 (Tenn. Ct. App. Sept. 26, 2005). We view the requirements regarding specific findings and conclusions "with great seriousness," not as a "trivial technicality." *White v. Moody*, 171 S.W.3d at 191.

The findings of fact and conclusions of law required by Tennessee Code Annotated Section 36-1-113(k) must address the two necessary elements of every termination case: (1) whether one or more of the statutory grounds for termination have been established, and (2) whether terminating parental rights is in the child's best interest. *In re J.D.C.*, No. E2007-02371-COA-R3-PT, 2008 WL 1899987, at *8 (Tenn. Ct. App. Apr. 30, 2008). Given the importance of establishing the permanent placement of a child who is the subject of a termination proceeding, the trial court should include findings of fact and conclusions of law with regard to each ground for termination presented. *In re G.N.S.*, 2006 WL 3626322, at *6. However, the statutory requirement to prepare written findings of fact and conclusions of law also applies with equal force to the best interest component of parental termination

cases. *In re J.D.C.*, 2008 WL 1899987, at *8.

For example, in *In re B.L.R.*, No. W2004-02636-COA-R3-PT, 2005 WL 1842502 (Tenn. Ct. App. Aug. 4, 2005), this Court concluded that the trial court's findings with regard to the child's best interest were insufficient. The trial court's order in that case included several findings of fact and conclusions of law, but with regard to the best interests of the child, stated only:

> That it is by clear and convincing evidence that it is in the best interest of the child,, that the parental rights of [Father] to the child be forever terminated and that the complete custody, control, and guardianship of the child be awarded to the State of Tennessee, Department of Children's Services, with the right to place to [sic] the child for adoption and to consent to such adoption in loco parentis.

*Id.* at *8.

According to this Court, the above order was insufficient because it was completely devoid of any findings specifically with regard to the child's best interests and did "not include any analysis of the factors set forth in section 36-1-113(i) of the Tennessee Code and their applicability to that facts of this case." *Id.* at *16. Accordingly, this Court vacated the termination of the father's parental rights and remanded for the entry of appropriate findings of fact and conclusions of law. *Id.*

In this case, however, the trial court did make certain, albeit scant, findings. The trial court's order states: "By clear and convincing evidence termination is in the best interest of the child as to [Father] as he [i.e., Father] has no meaningful relationship with the child and severely abused the child." Based on this statement, the trial court terminated Father's rights on two grounds: (1) severe child abuse, and (2) no meaningful relationship. The trial court's order is not completely devoid of factual findings on these two grounds. These findings were based upon Father's own admissions, as well as the testimony of Dr. Hain, and the exhibits proferred at trial. Accordingly, the trial court does give some support for its decision to terminate Father's parental rights.

Even with these findings, however, the order lacks "any analysis of the factors set forth in section 36-1-113(i) of the Tennessee Code and their applicability to that facts of this case." *In re B.L.R.*, 2005 WL 1842502, at *16. This Court has held that "[a] judgment in a termination case will not be set aside if it can be reasonably inferred from the opinion or order that the decision was based on the statutory requirements." *In re Jeremy D. and*

*Nathan D.*, No. 01-A-01-9510-JV00479, 1996 WL 257495 (Tenn. Ct. App. May 17, 1996). Consequently, the failure to cite the statutory factors will not always be fatal to a termination order when the grounds cited by the trial court are reasonably ascertainable from the order.

We note that this case presents a unique factual situation. Given the child's extremely young age at the time Father was incarcerated, as well as Father's admission that he squeezed the child and his subsequent guilty plea to Attempted Aggravated Child Abuse, we cannot conclude that the trial court's reliance on solely the physical harm caused to child and the lack of relationship between the child and Father was in error. *See In re Audrey S.*, 182 S.W.3d 838, 877 (Tenn. Ct. App. 2005) (noting that "the consideration of a single factor . . . may dictate the outcome of the best interest analysis"). While the trial court's findings in this case border on insufficient, we conclude that, given the unique facts presented in this case, the findings are sufficient to afford reasonable appellate review. However, we caution the trial court that in cases that do not present this unique factual situation, findings such as those in this case may indeed "fatally undermine the validity of [a] termination order," and require remand to the trial court for more adequate findings. *In re S.M.*, 149 S.W.3d at 639.

Having found that the trial court's order supplies sufficient findings for this court to review, we next turn to consider whether there is clear and convincing evidence in the record to support the trial court's conclusion that termination of Father's parental rights was in the child's best interests. As discussed above, the trial court's decision on best interest was based upon two findings: (1) that Father had severely abused the child, Tenn. Code Ann. §36-1-113(i)(6); and (2) that there was no meaningful relationship between the Father and the child, Tenn. Code Ann. §36-1-113(i)(4). DCS caseworker, Terri Reeves, specifically testified that there was no meaningful relationship between Father and child; this testimony is undisputed in the record. Moreover, as discussed above, the trial court found clear and convincing evidence from the testimonies and the exhibits, all of which are discussed with particularity in the court's order that the child was the victim of severe abuse at the hands of Father. The record supports this finding. From the totality of the circumstances, we conclude that there is clear and convincing evidence in the record that termination of Father's parental rights is in this child's best interest.

## VII. Conclusion

For the foregoing reasons, we affirm the order of the trial court terminating Father's parental rights. Costs of this appeal are assessed against the Appellant Father. Because Appellant is proceeding as a pauper in this appeal, execution may issue against Michael O. for costs of the appeal if necessary. The case is remanded to the trial court for further proceedings as may be necessary and consistent with this Opinion.

_____
J. STEVEN STAFFORD, JUDGE